UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

MOSES SHERMAN  and LEOLA SHERMAN,

                              Plaintiffs,               Case No. 07 CV 6433 (KMK)

     - against-

A.J. PEGNO CONSTRUCTION CORP., et al.,

                              Defendants.

------------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO REMAND THE CASE TO STATE COURT**


**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiffs
180 Maiden Lane, 17th Fl.
New York, N.Y.  10038

## TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS AND PRIOR PROCEEDINGS ........................................................... 1

ARGUMENT ............................................................................................................................. 4

I.    REMOVING DEFENDANTS HAVE FAILED TO MEET THEIR
      EXACTING BURDEN OF SHOWING THAT DEFENDANT
      UNION CARBIDE WAS FRAUDULENTLY JOINED TO
      DEFEAT DIVERSITY JURISDICTION ............................................................................. 4

      1.   This Court Consistently Has Rejected Similar Fraudulent
           Joinder Claims In Cases From the Same New York City
           Asbestos Litigation ............................................................................................ 5

      2.   Plaintiffs Present Evidence Showing That They Can Assert
           Product Liability Claims Against Union Carbide As Alleged
           In Their Complaint ............................................................................................. 6

II.   PLAINTIFFS SHOULD BE AWARDED THEIR COSTS AND
      FEES IN OPPOSING DEFENDANTS' PATENTLY DEFICIENT
      REMOVAL  IN ORDER TO DETER SUCH DILATORY
      REMOVALS IN THE FUTURE ........................................................................................ 8

CONCLUSION ........................................................................................................................ 9

1

Plaintiffs Moses Sherman and Leola Sherman  respectfully submit this memorandum of law in support of their motion to remand this case to state court under 28 U.S.C. §1447, from which it was removed by Defendants Ford Motor Company ("Ford") and General Motors Corporation ("GM"), pursuant to 28 U.S.C. §1441.   In an apparent effort to disrail and delay a trial of this case in New York Supreme Court scheduled to begin in early October, Ford and GM have filed a patently deficient notice of removal on the grounds of purported federal diversity jurisdiction, since its allegations fall far short of the exacting standard for showing fraudulent joinder of a party to avoid diversity jurisdiction.   For these reasons, this case should be expeditiously remanded to state court for its scheduled trial.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

This action alleging state law product liability claims against several defendants for Plaintiffs' injuries sustained as a result of Mr. Sherman's asbestos exposures was filed in New York Supreme Court, County of New York, on or about November 6, 2006, under the original caption, Moses Sherman v. A. J. Pegno Construction Corp., et al., Index No. 116617/06.   This is one of thousands of asbestos personal injury cases which have been brought and consolidated for all purposes in the In re New York City Asbestos Litigation, Index No. 40000/88, presided over by the Hon. Helen E. Freedman, J.S.C., for almost two decades.

Moreover, because Mr. Sherman is dying from lung cancer, his case was assigned by Justice Freedman to the May 2007 In Extremis Trial Cluster, which under the management order of the New York City Asbestos Litigation, entitles it to an expedited trial.   At a pre-trial

conference held on June 19, 2007, Justice Louis B. York, to whom the case, along with another case, was assigned for trial, set October 8 as the trial date for this case and another case, as well as briefing schedules for pre-trial motions and schedules for the exchange of expert witness reports during this summer.

In their Notice of Removal, filed on July 16, 2007, Defendants allege that they first became aware of the grounds for removing this case to federal court at the June 19th pre-trial conference.   They learned that of the defendants remaining in the case, Union Carbide Corp. is the only citizen of New York.   Notice of Removal, ¶¶6, 9-13.   As such, it is the only remaining defendant that prevents removal of the case on the grounds of federal diversity jurisdiction.[1] The Notice alleges, "Union Carbide was brought into this action for the sole purpose of defeating diversity jurisdiction as Union Carbide has no real connection to this matter and there is no possibility based upon the pleadings and the discovery to date such that plaintiffs can state a cause of action against Union Carbide."  Id., ¶14.

Of relevance to Plaintiffs' motion to remand, Mr. Sherman testified in his deposition that between 1966 and 1973, he worked as a mechanic at a few service stations and garages. (Sherman Tr. 21, 35-36, 68)[2]   He worked at a garage, "Times Square Auto," for two or three years.  (Id. at 51-52)   He did brake repair work there, and recalled installing new brake products marked with the Chrysler-brand name, "Mopar." (Id. at 54)  "Most of [his work] was brakes and

_____

[1] As a remaining Defendant, Union Carbide prevents removal of this case under 28 U.S.C. §1441(b) because it is "a citizen of the State in which such action is brought."

[2] "(Sherman Tr. ##)" refers to the page number(s) of the transcript of the deposition of Moses Sherman, on January 31, 2007 (copies of which are appended at Exhibit 1 to the Affirmation of Stephen J. Riegel, dated July 30, 2007 ("Riegel Aff."))

tires." (Id. at 55-56)  He estimated he used a "Mopar replacement brake" there, sometimes "once or twice a week." (Id. at 130)

He also worked at Avis at J.F.K. and LaGuardia Airports for about two years during this same period. (Id. at 64)  His job there included checking the condition of brakes and replacing the brakes. (Id. at 64-65)  At that time, Avis leased "[a]ll Chryslers." (Id. at 67).  He replaced brakes on these vehicles "once a week." (Id.)  Most of "the brakes that came off the vehicles" were Mopar brand. (Id. at 66)  He also recalled frequently having to clean the brakes on these cars by blowing out the dust from the drums with an air hose. (Id. at 65)

Mr. Sherman stated that his procedure for replacing automotive brakes was the same for all brake jobs. (Id. at 111)  When replacing them, he manipulated new brake shoes and linings which contained asbestos. (Id. at 56-57, 78)  He sometimes had to use a machine to "sand the shoes off in order to fit it [on the drum]," or sandpaper to sand down the brake linings. (Id. at 57-58)  He typically had to repeatedly do these sanding tasks to fit the shoe and lining to the drum. (Id. at 58-60, 132)  Sanding the brake lining would create dust and he breathed the dust created. (Id. at 132)

Defendants' Notice of Removal asserts that Defendant Union Carbide has been fraudulently joined to defeat federal diversity jurisdiction over this case.  Notice of Removal, ¶14.  It further states that Plaintiffs' interrogatory responses and Mr. Sherman's deposition testimony fail to mention that he "was exposed to an asbestos-containing product manufactured or sold by Union Carbide." Id., ¶16.

**ARGUMENT**

**I.**

**REMOVING DEFENDANTS HAVE FAILED TO MEET THEIR EXACTING
BURDEN OF SHOWING THAT DEFENDANT UNION CARBIDE WAS
FRAUDULENTLY JOINED TO DEFEAT DIVERSITY JURISDICTION**

Generally, the burden is on the removing party to prove that it has met the requirements

for removal. Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000);

Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (S.D.N.Y. 1998). Moreover, because federal

courts are of limited jurisdiction, "federal courts construe the removal statute narrowly, resolving

any doubts against removability." Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045-

46 (2d Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

Moreover, the standard for showing that a defendant has been fraudulently joined to defeat

diversity jurisdiction in federal court is an extremely rigorous one:  "[T]he defendant must

demonstrate, by clear and convincing evidence, either that there has been outright fraud

committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that

a plaintiff can state a cause of action against the non-diverse defendant in state court."

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998).  In other words, "The

defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual

and legal issues must be resolved in favor of the plaintiff."  Id.  Moreover, "[a] motive [of

plaintiff] to prevent removal, by itself, does not render the joinder of a defendant fraudulent for

removal purposes." Arseneault v. Congoleum Corp., 2002 WL 472256 at *5 (S.D.N.Y. March

26, 2002); see also Chicago, R.I. & P. Ry. Co.v. Schwyhart, 227 U.S. 184, 193 (1913).

5

**1.  This Court Consistently Has Rejected Similar Fraudulent Joinder
Claims In Cases From the Same New York City Asbestos Litigation**

Recently, this Court three times has held that defendant has failed to meet its initial burden of showing fraudulent joinder in removing an asbestos personal injury case from New York state court.  Dexter v. A C & S Inc., 2003 WL 22725461 (S.D.N.Y.  Nov. 18, 2003) (Casey, J); Arseneault v. Congoleum Corp., supra (McKenna, J.); Vasura v. AC and S, 84 F. Supp.2d 531 (S.D.N.Y. 2000) (Haight, J.).  In all these decisions, the Court rejected the same contentions advanced by GM and Ford here – that the plaintiff's failure to directly identify a defendant asbestos product maker or user as exposing him or her to asbestos dictates that the defendant is fraudulently joined.  Dexter, at *3; Arsenault,  at *7; Vasura, 84 F. Supp.2d at 539.

All three decisions of the Court also emphasize that the standard for evaluating a claim of fraudulent joinder is not one for a summary judgment motion, but rather whether "there is no possibility that plaintiff can state a cause of action 'based on the pleadings.'" Vasura, 84 F. Supp. 2d at 539 (quoting Pampillonia, 138 F.3d at 461); Dexter, at *2; Arseneault, at *7.  In two of the cases, plaintiffs' complaints' "broad claims" against the makers and sellers of asbestos products, similar to the allegations against Union Carbide in Plaintiffs' Complaint here[3], were sufficient to establish that there was such a possibility of stating a claim against the non-diverse defendants.  Dexter, at *3; Vasura, 48 F. Supp. 2d at 539.

Finally, in Arseneault, this Court considered submissions beyond the pleadings in order to

---

[3]  For example, the Weitz & Luxenberg Standard Asbestos Complaint for Personal Injury No. 7 alleges, inter alia, "The asbestos related disease of the plaintiff was proximately caused by [Union Carbide's]  negligent actions in that . . . [it] negligently designed, processed, manufactured, packaged, distributed, delivered and/or installed the asbestos-containing products to which the plaintiff was exposed."  Id. at ¶172 at p. 26 (a copy of which appears at Exhibit E to Defendants' Notice of Removal)

determine whether the claims against two asbestos product makers were fraudulently joined. Referring to Plaintiffs' submissions of workers' deposition testimony showing that the two defendants' asbestos products were at "work sites in the area in which [plaintiff] worked" at roughly contemporaneous times, Judge McKenna concluded "that there is <u>circumstantial</u> <u>evidence</u> from which it could be found that Mr. Areseneault was affected by products of [the two defendants]." <u>Arseneault</u>, at *8 (emphasis added).

**2.    Plaintiffs Present Evidence Showing That They Can Assert Product**
**     Liability Claims Against Union Carbide As Alleged In Their Complaint**

     In support of their motion to remand, Plaintiffs submit evidence which substantiates Plaintiffs' claims against Union Carbide Corporation, as broadly alleged in the Complaint. It can reasonably be inferred from this circumstantial evidence that Union Carbide supplied its Calidria-brand raw asbestos fibers to Chrysler which then incorporated it in its brake linings, which Mr. Sherman testified he was exposed to.

     First, Union Carbide shipping records show shipment of thousands of pounds of Calidria asbestos ("Product No. RG-244") to the Chrysler Corp. Chemical Division in Trenton, Michigan, from 1969 through 1978, which encompasses the times Mr. Sherman repaired Chrysler brakes while working at the Times Square Auto station and for Avis at J.F.K. and LaGuardia Airports. (Copies of these Union Carbide shipping records and invoices appear at Exhibit 2 to the Riegel Aff.) Chrysler's Responses to Plaintiffs' First Set of Interrogatories in an asbestos litigation in Ohio state, "Brake linings were manufactured at the Trenton Chemical Plant for use in its automobiles beginning in 1959 and ending in 1988." (DaimlerChrsyler's Interrogatory

Responses at p. 12)[4]  While it never mined or manufactured or sold "raw asbestos fiber," it

"purchased chrysotile asbestos fiber" from among others, "Union Carbide Materials Division."

(Id.)    The brake linings that Chrysler manufactured included "about 50% chrysotile asbestos"

mixed in. (Id.).   The finished linings were marked with its identification as the manufacturer.

(Id. at p. 13)   Chrysler sold and distributed these asbestos-containing brake replacement parts

under the "Mopar" trade name. (Id. at p. 12)

     It is well-established in New York product liability law, which provides the substantive

law of this case, that a maker or seller of a defective component that is incorporated as part of a

larger product is liable to the ultimate user of the finished product who is injured by it.  See

Smith v. Peerless Glass Co., 259 N.Y. 292, 296 (1932); Ayala v. V & O Press Co., 126 A.D.2d

229, 234 (2d Dep't 1987); 1 Weinberger, New York Products Liability 2d §5:07 (1997 ed.)

Indeed, in recent decisions, where Union Carbide supplied its same Calidria asbestos to product

makers who incorporated it into other asbestos-containing products, plaintiffs' product liability

claims against Union Carbide were allowed to go to trial.  See Conwed Corp. v. Union Carbide

Chemicals and Plastics Co., Inc., 287 F. Supp. 2d 993 (D. Minn. 2001); McConnell v. Union

Carbide Corp., 937 So.2d 148 (Fla. App. 4th Dist. 2006).

     Thus, Defendants Ford and GM have fallen far short of meeting their exacting burden of

---

[4] This citation refers to the page number(s) of DaimlerChrysler Corporation's Responses
To Plaintiffs' First Master Set of Interrogatories in Coleman v. A.C. Delco et al., Case No. CV
408170 (Court of Common Pleas, Cuyahoga Co., Ohio), dated November 30, 2000 (a copy of
which appears at Exhibit 3 to the Riegel Aff.)

showing, by clear and convincing evidence, that Plaintiffs cannot assert any possible claim for

relief against Union Carbide, or that it was fraudulently joined as a defendant in this case.

Therefore, because federal diversity jurisdiction does not exist between the parties in this case,

the case must be remanded to New York Supreme Court where it was originally filed.


## II.

### PLAINTIFFS SHOULD BE AWARDED THEIR COSTS AND FEES IN OPPOSING DEFENDANTS' PATENTLY DEFICIENT REMOVAL IN ORDER TO DETER OTHER SUCH DILATORY REMOVALS IN THE FUTURE

The removal statute under which this motion is brought specifically provides that "[a]n

order remanding the case may require payment of just costs and any actual expenses, including

attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). The awarding of

plaintiff's costs and expenses under this provision is within the Court's discretion, and does not

require a finding of bad faith or frivolity. Morgan Guar. Trust Co. of New York v. Republic of

Palau, 971 F.2d 917, 923-24 (2d Cir. 1992).

Such an award is well justified by the circumstances in this case. Defendants' removal

offends not one, but three, recent reported precedents of this Court, each of which rejects almost

identical arguments for asserting removal based upon fraudulent joinder of a defendant in

asbestos cases brought in the New York City Asbestos Litigation in New York Supreme Court,

as here.

No matter what Ford and GM's ultimate intentions or motives were in removing this case

now, the effect of its removal clearly is to delay and even deny Mr. Sherman, who is dying of

lung cancer, the opportunity to be alive and participate in his expedited trial in New York

9

Supreme Court set to begin in early October.    (Because removal of this case has stayed the

numerous pre-trial discovery and motion procedures in state court that Justice York has

scheduled during this and next month, the trial date may have to be postponed.)    The awarding

of fees and expenses will at least serve to deter Ford, GM and other defendants in the New York

City Asbestos Litigation from attempting in the future such disruptive and meritless removals

before a trial is set to begin.

## CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs' motion to remand their

case to New York Supreme Court, for the award of their fees and expenses in opposing this

removal, and for such other relief as the Court deems just and fair.

Dated:  New York, N.Y.
      July 31, 2007

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiffs
180 Maiden Lane, 17th Fl.
New York, N.Y.  10038

By:    _____
Stephen J. Riegel (SR 8832)
(212) 558-5838