UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MOSES SHERMAN and LEOLA SHERMAN,

                              Plaintiffs,                     Case No. 07 CV 6433 (RJS)

   - against-

A.J. PEGNO CONSTRUCTION CORP., et al.,

                              Defendants.

-------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO REMAND**

**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiffs
180 Maiden Lane, 17th Fl.
New York, N.Y.  10038

1

Plaintiffs Moses Sherman and Leola Sherman, his wife, respectfully submit this memorandum of law in support of their motion to remand this case to state court, from which it was removed by Defendants Ford Motor Company ("Ford") and General Motors Corporation ("GM"). In an apparent effort to derail and delay a trial of this case in New York State Supreme Court scheduled to begin in early October, Ford and GM have filed patently improper removal papers on the ground of purported federal diversity jurisdiction, since its allegations obviously fall far short of the exacting standard for showing fraudulent joinder of a party to prevent such a removal. For these reasons, this case should be expeditiously remanded to state court for trial pursuant to 28 U.S.C. §1447.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

This action alleging state law product liability claims against several defendants for personal injuries sustained as a result of Mr. Sherman's asbestos exposures was filed in New York Supreme Court, County of New York, on or about November 6, 2006, under the original caption, Moses Sherman v. A. J. Pegno Construction Corp., et al., Index No. 116617/06. This is one of thousands of asbestos personal injury cases which have been brought and consolidated for all purposes in the In re New York City Asbestos Litigation, Index No. 40000/88 ("NYCAL"), over the past two decades, under the supervision of Supreme Court Justice Helen E. Freedman.[1]

---

[1] The pleading and discovery practices in the NYCAL are described in detail in Arseneault v. Congoleum, 2002 WL 472256 at *1 (S.D.N.Y. March 26, 2002).

Because Mr. Sherman was dying from lung cancer, his case was assigned by Justice Freedman to the May 2007 In Extremis Trial Cluster, which under the NYCAL management order, entitles it to an expedited trial.[2]  At a pre-trial conference held on June 19, 2007, Justice Louis B. York, to whom this case, along with another case in the same Trial Cluster[3], was assigned for trial, set October 8 as the start of trial of both cases, and established schedules for briefing of pre-trial motions and for the exchange of expert witness reports during the summer.

In their Notice of Removal, filed on July 16, 2007, Defendants Ford and GM allege that they first became aware of the grounds for removing this case to federal court at the June 19th pre-trial conference:  They then learned that of the defendants remaining in the case, Union Carbide Corporation was the only citizen of New York.  Notice of Removal, ¶¶6, 9-13.  As such, it would be the only defendant preventing removal of the case on the grounds of federal diversity jurisdiction under 28 U.S.C. §1441(b).[4]  The Notice alleges, "Union Carbide was brought into this action for the sole purpose of defeating diversity jurisdiction as Union Carbide has no real connection to this matter and there is no possibility based upon the pleadings and the discovery to date such that plaintiffs can state a cause of action against Union Carbide." Id.,

---

[2]  Mr. Sherman passed away last month.

[3]  The other case, John Alexander and Braulia Alexander v. Amchem Products, Inc., et al., Index No. 117395/06 (Sup. Ct. N.Y. Co.), also was removed to this Court on the same day as this case by Defendants Ford and GM on the same ground of fraudulent joinder of Union Carbide Corporation.  It is pending in this Court under Case No. 07 CV 6441, currently assigned to Judge George Daniels, and Plaintiffs' motion to remand that case for similar reasons has already been filed.

[4]  That provision prevents removal based on diversity jurisdiction if any "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

3

¶14.

Of relevance to this motion, Mr. Sherman testified in his deposition that between 1966 and 1973, he worked as a mechanic at a few service stations and garages. (Sherman Tr. 21, 35-36, 68)[5] He worked at one garage, "Times Square Auto," for two or three years. (Id. at 51-52) He did brake repair work there, and recalled installing new brake products marked with the Chrysler-brand name, "Mopar." (Id. at 54) "Most of [his work] was brakes and tires." (Id. at 55-56) He estimated he used a "Mopar replacement brake" there "once or twice a week." (Id. at 130)

He also worked at Avis at J.F.K. and LaGuardia Airports for about two years during this same period. (Id. at 64) His job there included checking the condition of brakes and replacing them. (Id. at 64-65) At that time, Avis leased "[a]ll Chryslers." (Id. at 67). He replaced brakes on these vehicles about "once a week." (Id.) Most of "the brakes that came off the vehicles" were Mopar brand. (Id. at 66) He also recalled frequently having to clean the brakes on these cars by blowing out the dust from the brake drums with an air hose. (Id. at 65)

Mr. Sherman stated that his procedure for replacing automotive brakes at these jobs was the same. (Id. at 111) When replacing them, he worked with new brake shoes and asbestos-containing brake linings. (Id. at 56-57, 78) He sometimes had to use a machine to "sand the shoes off in order to fit it [on the drum]," or sandpaper to sand down the asbestos brake linings. (Id. at 57-58) He typically had to repeatedly do these sanding activities to fit the shoe and lining to the drum. (Id. at 58-60, 132) Sanding of the brake lining would create asbestos dust and he

---

[5] "(Sherman Tr. ##)" refers to the page number(s) of the transcript of the deposition of Moses Sherman, on January 31, 2007 (copies of which are appended at Exhibit 1 to the Affirmation of Stephen J. Riegel, dated September 26, 2007 ("Riegel Aff.")).

4

breathed that dust. (Id. at 132)

As Defendants' Notice of Removal alleges, Mr. Sherman in his deposition testimony did not specifically state that he "was exposed to an asbestos-containing product manufactured or sold by Union Carbide." Id., ¶16.

### ARGUMENT

### I.

### DEFENDANTS FORD AND GM HAVE FAILED TO MEET THEIR HEAVY BURDEN OF SHOWING THAT DEFENDANT UNION CARBIDE WAS FRAUDULENTLY JOINED TO DEFEAT DIVERSITY JURISDICTION REMOVAL

Generally, the burden is on the removing party to prove that it has met the requirements for removal. Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000); Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (S.D.N.Y. 1998). Moreover, because federal courts are of limited jurisdiction, "federal courts construe the [diversity jurisdiction] removal statute narrowly, resolving any doubts against removability." Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

Moreover, the standard for showing that a defendant has been fraudulently joined to defeat diversity jurisdiction in federal court is an extremely rigorous one: "[T]he defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). In other words, "The

5

defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Id.  Moreover, "[a] motive [of plaintiff] to prevent removal, by itself, does not render the joinder of a defendant fraudulent for removal purposes." Arseneault v. Congoleum Corp., 2002 WL 472256 at *5 (S.D.N.Y. March 26, 2002); see also Chicago, R.I. & P. Ry. Co. v. Schwyhart, 227 U.S. 184, 193 (1913).

1. **This Court Consistently Has Rejected Similar Fraudulent Joinder Claims In Cases From the NYCAL**

Recently, this Court thrice has held that defendant has failed to meet its initial burden of showing fraudulent joinder in removing an asbestos personal injury case from New York State Supreme Court. Dexter v. A C & S Inc., 2003 WL 22725461 (S.D.N.Y. Nov. 18, 2003) (Casey, J) (holding unnamed makers and sellers of asbestos products not fraudulently joined); Arseneault v. Congoleum Corp., supra (McKenna, J.) (holding that Rapid American Corp. and Empire Ace Insulation Mfg. Co. were not fraudulently joined); Vasura v. Acands, 84 F. Supp.2d 531 (S.D.N.Y. 2000) (Haight, J.) (holding that Rapid American Corp. was not fraudulently joined). In all these decisions, the Court rejected the same contentions advanced by GM and Ford here – that the plaintiff's failure to directly identify a defendant asbestos product maker or user as exposing him or her to asbestos means that the defendant is fraudulently joined. Dexter, at *3; Arsenault, at *7; Vasura, 84 F. Supp.2d at 539.

These decisions also emphasize that a defendant's burden of showing fraudulent joinder is greater than showing that it is entitled to summary judgment or even to the dismissal of a complaint. Dexter, at **2-3; Arseneault, at *6.  Rather, it is whether defendant can show by "clear and convincing evidence" that "there is no possibility that plaintiff can state a cause of

action 'based on the pleadings.'" Vasura, 84 F. Supp. 2d at 539 (quoting Pampillonia, 138 F.3d at 461); Dexter, at *2; Arseneault, at *7. In two of the cases, plaintiffs' complaints' "broad claims" against the makers and sellers of asbestos products, similar to the allegations against Union Carbide in Plaintiffs' Complaint here[6], were sufficient to establish that there was a possibility of stating a claim against the non-diverse defendants. Dexter, at *3; Vasura, 48 F. Supp. 2d at 539.

Finally, in Arseneault, Judge McKenna considered submissions beyond the pleadings in order to determine whether the claims against two asbestos product makers were fraudulently joined. Referring to Plaintiffs' submissions of workers' deposition testimony showing that the two defendants' asbestos products were at "work sites in the area in which [plaintiff] worked" at roughly contemporaneous times, he concluded "that there is circumstantial evidence from which it could be found that Mr. Arseneault was affected by products of [the two defendants]." Arseneault, at *8 (emphasis added).

### 2. Plaintiffs Present Evidence Showing That They Can Assert Product Liability Claims Against Union Carbide As Alleged In Their Complaint

In support of their motion to remand, Plaintiffs submit evidence which substantiates Plaintiffs' claims against Union Carbide, as broadly alleged in the Complaint. It can reasonably be inferred from this circumstantial evidence that Union Carbide supplied its "Calidria"-brand

---

[6] For example, the Weitz & Luxenberg Standard Asbestos Complaint for Personal Injury No. 7 alleges, inter alia, "The asbestos related disease of the plaintiff was proximately caused by [Union Carbide's] negligent actions in that . . . [it] negligently designed, processed, manufactured, packaged, distributed, delivered and/or installed the asbestos-containing products to which the plaintiff was exposed." Id. at ¶172 at p. 26 (a copy of which appears at Exhibit E to Defendants' Notice of Removal).

7

raw asbestos fibers to Chrysler Corporation to incorporate in its manufacture of brake linings, which Mr. Sherman testified he was exposed to.

First, Union Carbide shipping records show shipment of thousands of pounds of Calidria asbestos ("Product No. RG-244") to the Chrysler Corp. Chemical Division in Trenton, Michigan, nearly every month from 1969 through 1978[7], which encompasses the times Mr. Sherman removed and installed Chrysler-brand brakes while working at the Times Square Auto station and for Avis at J.F.K. and LaGuardia Airports. Chrysler's Responses to Plaintiffs' First Set of Interrogatories in an asbestos litigation in Ohio state, "Brake linings were manufactured at the Trenton Chemical Plant for use in its automobiles beginning in 1959 and ending in 1988." (DaimlerChrsyler's Interrogatory Responses at p. 12)[8] While it never mined or manufactured or sold "raw asbestos fiber," Chrysler did "purchase[ ] chrysotile asbestos fiber" from among others, "Union Carbide Materials Division." (Id.) The brake linings that Chrysler manufactured included "about 50% chrysotile asbestos" mixed in. (Id.) The finished linings were marked with its identification as the manufacturer. (Id. at p. 13) Chrysler sold and distributed these asbestos-containing brake replacement parts under the "Mopar" trade name. (Id. at p. 12)

It is well-established in New York product liability law, which provides the substantive law of this case, that a maker or seller of a defective component that is incorporated as part of a larger product is liable to the ultimate user of the finished product who is injured by it. See

---

[7] Copies of these Union Carbide shipping records and invoices appear at Exhibit 2 to the Riegel Aff.

[8] This citation refers to the page number(s) of DaimlerChrysler Corporation's Responses To Plaintiffs' First Master Set of Interrogatories in Coleman v. A.C. Delco et al., Case No. CV 408170 (Court of Common Pleas, Cuyahoga Co., Ohio), dated November 30, 2000 (a copy of which appears at Exhibit 3 to the Riegel Aff.).

8

Smith v. Peerless Glass Co., 259 N.Y. 292, 296 (1932); Ayala v. V & O Press Co., 126 A.D.2d 229, 234 (2d Dep't 1987); 1 Weinberger, New York Products Liability 2d §5:07 (1997 ed.) Indeed, in recent decisions, where Union Carbide supplied its same Calidria asbestos to product makers who incorporated it into other asbestos-containing products, plaintiffs' product liability claims against Union Carbide as a "bulk supplier" of asbestos fibers were allowed to go to trial. See In re: Asbestos, Cause No. 2004-03964, mem. op. at pp. 3-4 (11th Dist. Ct., Harris Co., Tex. September 26, 2005) (Davidson, J.) (a copy of which is appended at Exhibit 4 to the Riegel Aff.); Conwed Corp. v. Union Carbide Chemicals and Plastics Co., Inc., 287 F. Supp. 2d 993, 995-97 (D. Minn. 2001); McConnell v. Union Carbide Corp., 937 So.2d 148, 154-56 (Fla. App. 4th Dist. 2006).[9]

Finally, at the pre-motion conference before Your Honor last week, mention was made of a possible settlement with Union Carbide of the claims against it in this case. Counsel for Plaintiffs and Union Carbide have recently orally agreed in principle to a settlement of claims against it in this and numerous other asbestos personal injury cases in state court. Counsel believes that such settlement will take several weeks before it is embodied in a final written settlement agreement, with the necessary consents, releases and other documentation. But Union Carbide's negotiation and attempt to settle the claims against it in this very case are the most direct and convincing rejoinder to Defendants' claims of fraudulent joinder of Union

---

[9] Defendants' contention in their pre-motion conference letter to the Court, dated September 17, 2007, that the granting of summary judgment to Union Carbide in another NYCAL case, D'Ulisse v. Amchem Products, Index No. 113838/04, somehow is relevant to the factual and legal issues raised here is well wide of the mark. Defendants' Letter at p. 3. Besides involving a different case with its own unique facts, this Court has made clear that the standard for showing a claim is fraudulently joined is different, and more demanding, than that for obtaining summary judgment on that claim. Dexter, at **2-3; Arseneault, at *6.

9

Carbide here.[10]

Thus, Defendants Ford and GM have fallen far short of meeting their exacting burden of showing, by clear and convincing evidence, that Plaintiffs cannot assert any possible claim for relief against Union Carbide, and that it was fraudulently joined as a defendant in this case. Therefore, because a New York corporation properly remains as a defendant, removal was improper under the diversity jurisdiction removal statute, 28 U.S.C. §1441(b), and the case must be remanded to New York Supreme Court where it was originally filed.

## II.

### PLAINTIFFS SHOULD BE AWARDED THEIR COSTS AND FEES IN OPPOSING DEFENDANTS' PATENTLY MERITLESS REMOVAL IN ORDER TO DETER OTHER SUCH DILATORY REMOVALS IN THE FUTURE

The removal statute under which this motion is brought specifically provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). The awarding of plaintiff's costs and expenses under this provision is within the court's discretion, and does not require a finding of bad faith or frivolity. Morgan Guar. Trust Co. of New York v. Republic of Palau, 971 F.2d 917, 923-24 (2d Cir. 1992).

Such an award is well justified by Defendants' conduct in this case. Their removal flies in the face of not one, but three, recent reported decisions of this Court, each of which rejects almost identical arguments for removal, based upon fraudulent joinder of a defendant, of

---

[10] 28 U.S.C. §1446(b) states that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [providing federal diversity jurisdiction] more than 1 year after commencement of the action."

10

asbestos cases brought in the <u>NYCAL</u>, as here.

Although Mr. Sherman has died before his originally-scheduled trial date in state court, defendants' belated removals in the <u>Alexander</u> case and other cases involving dying plaintiffs may very likely make the difference between a plaintiff being alive for his or her trial or not. Moreover, Defendants' removal has delayed and prevented Plaintiff Leola Sherman, his widow, from having this case expeditiously tried in state court, where she and her husband filed it. The awarding of Plaintiffs' fees and expenses in opposing this removal will at least serve to deter Ford, GM and other defendants in the <u>NYCAL</u> from attempting in the future such disruptive and meritless removals of cases on the eve of their trial.

## CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs' motion to remand their case to New York Supreme Court, to award them their fees and expenses in opposing this removal, and for such other relief as the Court deems just and fair.

Dated:  New York, N.Y.
        September 26, 2007

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
Attorneys for Plaintiffs
180 Maiden Lane, 17th Fl.
New York, N.Y. 10038

By: _____
    Stephen J. Riegel (SR 8832)
    (212) 558-5838