UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MOSES SHERMAN and LEOLA SHERMAN,

                    Plaintiffs,

                                                  Case No. 07 CV 6433 (RJS)

     -against-

A.J. PEGNO CONSTRUCTION CORP., et al.

                    Defendants.
------------------------------------------------------------x

## *DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND*

                                      AARONSON RAPPAPORT
                                       FEINSTEIN & DEUTSCH, LLP
                                       Attorneys for Defendants
                                       FORD MOTOR COMPANY and
                                       GENERAL MOTORS CORPORATION
                                       757 Third Avenue
                                       New York, N.Y. 10016

This memorandum of law is respectfully submitted in opposition to the plaintiffs' motion, which seeks to remand this case back to New York State Court. This case had been removed by defendants Ford Motor Company and General Motors Corporation through a notice of removal that was filed on July 16, 2007. As will be explained below, the plaintiffs' motion is moot because of their settlement with the one party which was allegedly preventing the excise of federal jurisdiction over this matter. Moreover, even if there had been no settlement, a clear reading of the facts, law, and the plaintiffs' own claims clearly demonstrate that this defendant had been fraudulently joined in the state court action, thereby making removal to federal court perfectly appropriate.

### I.    THE PLAINTIFFS' MOTION IS MOOT

As the plaintiffs' papers make clear, they present one and only one argument with regard to this case being remanded back to state court, an argument which focuses on Union Carbide being listed as a defendant in this matter. The plaintiff argues that because Union Carbide is a New York defendant, that company's presence defeats diversity jurisdiction. The converse of the plaintiffs' argument, of course, is that if Union Carbide were not a defendant in this matter, federal jurisdiction of this matter would admittedly be appropriate.

In this particular instance, however, the plaintiff has now settled their claims with Union Carbide, so the only argument for this case not remaining in federal court has now evaporated.

To put it mildly, plaintiffs' counsel has been less than forthright with regard to their settlement with Union Carbide. The court will recall that when the parties to this case appeared for a pre-motion conference on September 19, 2007, plaintiffs' counsel did not even bother to mention to the Court that they had reached a settlement with Union Carbide. It was only when the defendants had a chance to reply to the plaintiffs' oral presentation that we were able to

598327v

bring this settlement to the Court's attention, something that in turn would not have happened but for Union Carbide's counsel informing us of the settlement literally minutes before the pre-motion conference began. Outrageously, the Court can be quite sure that but for the defendants belatedly finding out about the settlement, plaintiffs' counsel would still be hiding this quite dispositive fact to the Court's attention. Although the plaintiffs' papers conclude with a request for costs and fees, we would submit that it is in our adversaries' less than forthright behavior which should be subject to sanction and reprimand.

Eventually, of course, when confronted with the inconvenient fact of the settlement in open court, opposing counsel had no choice but to acknowledge the settlement, albeit using the same kind of slippery language that characterizes the current motion papers, with the use of words like "possible" settlement and claims that it for some reason might take weeks and weeks before the formal settlement papers are finalized and signed (why it would take so long is, not surprisingly, never explained).

Nevertheless, the plaintiffs' papers do now acknowledge the settlement in principal with Union Carbide, and the fact that not every t has been crossed and i dotted in the settlement papers does not negate the fact that, for all intents and purposes, Union Carbide is no longer an active defendant in this case, and will not be when this case goes to trial. Surely, the plaintiffs should not be allowed to defeat jurisdiction by deliberately dragging their feet in formalizing form settlement documents they have exchanged in literally hundreds and hundreds of asbestos cases.

The court should also be aware that the plaintiffs have apparently now abandoned an argument suggested during the pre-motion conference, but not preserved in the current papers, namely the backup contention that the Court should divest itself of jurisdiction since the Union

598327v

Carbide settlement had not yet been made at the time of the original removal. That argument was always something of an exercise in futility, as even if the court adopted it, it would only have resulted in a remand and then another immediate removal once the Union Carbide settlement was "finalized" in just a few weeks time, with admittedly no basis thereafter to oppose removal. Practically, the idea that this case should go back to state court for only a few weeks before it is removed again upon the finalization of the Union Carbide settlement is particularly impractical, especially given professed concerns about not wasting judicial resources and seeking an expeditious resolution of a client's claims.[1]

As the plaintiffs' papers note, 28 U.S.C. § 1446(b) requires that any removal in this case based on diversity must be made within one year of the action being commenced, which in this case means by November 6, 2007. It would truly be outrageous if the plaintiffs were allowed to delay executing papers on an agreed - to settlement until just after that date passes in their frantic effort to avoid federal court. We would submit that, in order to avoid the possibility of this kind of conduct, the Court can simply hold the pending motion in abeyance pending the exchange of the closing papers. Dilatory delays in exchanging settlement papers should not be allowed to defeat what would otherwise be appropriate jurisdiction.

Before leaving the subject of the Union Carbide settlement, we must also address perhaps the most ludicrous of the plaintiffs' arguments, namely that Union Carbide's decision to settle this case shows that the plaintiffs' claims against that defendant actually had merit. Needless to say, our adversary cites no law in support of the proposition that a settlement can in any way be construed as endowing a case with, or verifying a case's, merit. As the plaintiffs are (or should

---

[1] The need for an expeditious resolution of this particular case has, of course, greatly diminished with the death of the primary plaintiff (which arguably stays this matter until there has been a substitution), a death which was not revealed at the time of the pre-motion conference and the mention of which was only inserted into a footnote in the plaintiffs' current papers.

598327v

be) well aware, defendants settle even meritless actions for all sorts of reasons, most notably because of rising litigation costs. For the plaintiffs to suggest that Union Carbide's settlement is some kind of acknowledgment of merit (something we can guarantee Union Carbide itself will vehemently deny, if asked) is at best incredibly naïve, and is at worst deliberately misleading to this Court.

## II. THE REMOVAL OF THE CASE BASED ON FRAUDULENT JOINDER

Even if we were to engage in the fiction that Union Carbide has not now agreed to settle this case, removal to federal court would still have been appropriate based on the fact that Union Carbide was fraudulently joined in the state court action in the first place in an effort to defeat federal jurisdiction.

The defendants are, of course, fully familiar with the three decisions concerning remand and removal in fraudulent naming circumstances on which the plaintiffs' motion relies. We are familiar, too, with the strict standards to which fraudulent joinder claims are held. Nevertheless, we would still suggest that the present litigation present something more than what occurred in those earlier decisions, particularly in light of the fact that, prior to the commencement of the instant litigation, plaintiffs' counsel had been repeatedly told that the basis of their claims against Union Carbide were not legally recognized in New York State. When a party brings a lawsuit based on a theory that has already been repeatedly rejected by the same court overseeing the current matter, there can be no better description of bringing a knowingly invalid lawsuit other than fraudulent joinder.

Because the three cases cited by plaintiffs' counsel broadly speak of a need to look at the pleadings in any particular case to decide whether or not a legitimate claim for fraudulent joinder might lie, it is first important for this Court to understand the acknowledged pleading practices of

598327v

this particular plaintiffs' counsel in New York State asbestos litigation. When defendants like Ford and General Motors are brought into an asbestos case by plaintiffs' counsel, they are joined with a laundry list of dozens upon dozens of other defendants. The defendants are then served not with a summons and complaint, but rather merely with a summons that refers the defendant to a non-attached "standard complaint" that plaintiffs' counsel had, years earlier, placed on file with the state court.

As we have previously explained, that standard complaint is quite literally a generic form, saying nothing more than all the numerous listed defendants either manufactured, sold, distributed, installed, used and/or provided premises with asbestos or asbestos containing products, and that [fill in the blank] may have been exposed to that unidentified product at an undisclosed time in an undisclosed location (to understand the generic nature of this form complaint, the court should recognized that the form complaint provides no information whatsoever with regard to the plaintiff, not even the plaintiff's name).

There is no specificity at all whatsoever in this form complaint. While it is all well and good to cite to cases requiring the court to look at the pleadings themselves to see if the plaintiffs can state a cause of action against the non-diverse defendant in state court, it seems reasonable to ask what the Court is to do when all it has to look at is a generic form document which intermingles close to one hundred different defendants in the broadest possible brush strokes, without saying what any of them actually did or did not do, when or to whom. The court will note that the plaintiffs' current motion papers do not even bother to attach a copy of this form complaint (despite the specific requirements of this court's individual rules), and that the one footnoted reference to the actual contents of their complaint perfectly illustrates the generic form of the document.

598327v

The advantage that this Court has is that the plaintiffs' moving papers do what the pleadings do not, i.e., actually state the nature of their claim against Union Carbide. Thus, in order to validate the allegedly non-fraudulent nature of their claim against Union Carbide, the plaintiffs' papers refer and rely on deposition testimony, as well as discovery from other litigation. Specifically, the plaintiffs allege that Mr. Sherman worked as an auto mechanic where he was exposed to asbestos products while installing Chrysler brand brake products. The plaintiff then claims that Union Carbide was one of several bulk suppliers of asbestos fibers to one Chrysler manufacturing facility. From there, the plaintiff makes the leap that of all the products made from all of the different suppliers' materials, the plaintiff must have been exposed to Union Carbide's fibers in particular, despite the seeming concession that there is no actual evidence that this is so.

The plaintiffs' theory of liability is commonly known as the "bulk supplier" theory. The problem here is that plaintiffs' counsel knows, and knew at the time that this particular litigation was commenced, and further knew when Union Carbide was brought into the case on a supplemental pleading, that the bulk supplier rationale for holding a defendant in a case has been rejected on numerous occasions by New York State courts.

The plaintiff should by now be well familiar with New York's law recognizing that the duty of a bulk supplier, such as Union Carbide, to warn about the potential hazards of its products, when the product is a component of an item manufactured or assembled by a third party (in this instance, Chrysler) is subject to practical limitations. Courts applying New York Law have held that where a bulk supplier of a raw ingredient sells its product to a sophisticated purchaser – manufacturer (i.e., Chrysler), who in turn incorporates the raw ingredient into a finished product that is then sold to an end-user, the supplier has no duty to warn the in-user, and may rely upon

598327v

the manufacturer to convey the warnings associated with the product. See, e.g., In Re Joint Eastern and Southern District Asbestos Litigation, 825 F.Supp. 1014 (S.D.N.Y. 1993).

In New York, the bulk supplier doctrine applies where (1) the bulk supplier provides adequate warnings to its immediate distributors and/or distributes; (2) "each party in the chain of distribution [is] a sophisticated user" and hence "aware of the toxicological characteristics of [the bulk product] and the necessary precaution to be taken when handling" it: and (3) the bulk supplier has no control over the finished product. See, e.g., Rivers v. AT&T Tech., Inc., 147 Misc.2d 366, 554 N.Y.S.2d 401, 405 (N.Y.Cty. 1990); Polimeni v. Minolta Corp., 227 A.D.2d 64, 653 N.Y.S.2d 429, 431 (3rd Dept. 1997). There can be no dispute that all of these factors apply to the present situation.

More significantly, the particular plaintiffs' attorneys involved in the case at bar were aware of how these legal standards applied to Union Carbide specifically before this particular litigation was ever started. We are aware of at least three cases in which New York State courts have dismissed claims brought by current plaintiffs' counsel against Union Carbide specifically because of the bulk supplier argument articulated above. The three cases in which current plaintiffs' counsel has been told that the legal theory upon which their cause of action against Union Carbide is premised (the same theory that the plaintiff admits exists in the case at bar) is not recognized under New York law are D'Ulisse v. Amchem Products, N.Y.Cty. Index No. 11383/04, Smyth v. A.O. Smith, N.Y.Cty. Index No. 104860/03 and Arsenault v. A. & S., Inc., N.Y.Cty. Index No. 1205220/00.[2]

---

[2] Copies of these decisions will be supplied to the Court under separate cover.

598327v

The plaintiffs, it should be noted, do not deny the holdings of these multiple cases, or deny that New York courts have thus consistently refused to recognize the legal theory they are trying to precede on in the case at bar. Instead, the plaintiffs' current motion papers simply argue that those earlier cases involved different facts, and that the standard with regard to remand motions based on fraudulent joinder claims is different than the standards used for summary judgment motions. As to the "different facts," clearly all cases involve different facts, even if the plaintiffs' view is obviously that the facts are so similar that they can use the same standard complaint for every single case. The point, however, is not that the facts of these earlier cases might have been different, but that the legal theory on which the plaintiffs were proceeding were precisely identical in those earlier cases, something the plaintiffs' papers do not deny.

As to the "summary judgment" argument, it is respectfully submitted that the present matter is more than a situation in which Union Carbide would most assuredly have been entitled to summary judgment based on product identification failures in the plaintiffs' case. This is something different. This is a lawsuit that is admittedly premised on a legal theory against Union Carbide that these particular plaintiffs' attorneys, from their own past experience, already knew was disallowed under New York Law from multiple other earlier cases. Apart from a written admission of fraudulent joinder, we would respectfully submit that it is harder to think of a clearer example of fraudulent joinder than bringing a lawsuit based on a legal theory against a specific defendant which one knows has already been rejected as legally unsound in multiple other cases by New York courts.

For all of the above reasons, it is therefore respectfully requested that the plaintiffs' motion should be denied in its entirety, and that this Court should continue to exercise jurisdiction over this lawsuit.

598327v

Dated: New York, New York
October 5, 2007

                                                              Respectfully submitted,

                                                              By: ELLIOTT J. ZUCKER (EJZ 8664)
                                                              AARONSON RAPPAPORT
                                                              FEINSTEIN & DEUTSCH, LLP
                                                              Attorneys for Defendants
                                                              FORD MOTOR COMPANY and
                                                              GENERAL MOTORS CORPORATION
                                                              757 Third Avenue
                                                              New York, N.Y.  10017
                                                              (212)  593-6700

598327v